Controllers, this case in my docket, 2-15-1040, Sean Schmit, Plaintiff-Appellant, v. Marcy Metcalf, Michelle R. Schnabel, U.S.S. Walden Park, Pet Sitters, Lance Clark, Soloners, and Jacqueline Soloners, Defendants-Appellants. Arguing on behalf of the Plaintiff-Appellant, Attorney Ms. Mary L. Hevesi. Arguing on behalf of the Defendants-Appellees, Attorney Mr. Stephen A. LaFelle. Also arguing on behalf of the Defendants-Appellees, Attorney Mr. Michael Reese. Thank you. Ms. Hevesi, you may proceed. Good morning, Your Honors. May I please have the floor? My name is Miriam Hevesi from Kaiser Law, and I represent the Plaintiff-Appellant, Sean Schmit. I'm going to ask that you speak louder. I can't hear you. I'm sorry. I have that camera. Just keep your voice up, and the microphone will pick it up. Okay. You just have to project a little bit. Okay. Thank you. In the big courtroom, we have people in the back, too, who need to hear you. Okay. Thank you. I'm sorry, Your Honor. As you all know from the legal briefs, there's three issues here. Are the homeowners owners under the Animal Control Act? Does the defense of assumption of risk apply to Sean Schmidt? And did we state a claim for negligence? Can I ask you a special question? Yes, of course. Are there any cases in Illinois that have imposed liability on homeowners when they were not physically present when the dog bit the third party? You know, typically, there isn't a second party involved. And in Hayes, this court went through the issue of trying to find cases that applied where there were other people involved. So all the other cases are involving just the owner. So, in short, there is no case specifically where the homeowners were held liable even though they were not physically present at the time of the bite, correct? Correct. I'm not saying that that's going to totally carry the day because that would sort of be a bright line ruling perhaps. Right. But, I mean, I didn't see any cases that that's happened here. Right. But, in theory, under the Animal Control Act, based upon the statutory liability, the presence is not the hallmark. It's who exerted the tight control over the animal. So if we agree or do you agree that Hayes v. Adams is distinguishable because there was full control relinquished? Absolutely. So here, what was the difference? Was there any control? Was it physical control? Was it supervisory control that the owners exercised? It's the supervisory control. In this situation, I imagine sort of the puppets. So the similars are the ones guiding the puppets. And so even though they're at work, the strings are still attached to what's going on in their home. And everything that's going on in their home is happening as a result of their requests, their demands, their specific instructions. Let's hold this off for a second. I mean, would we go that far? So the homeowner, obviously, you know, it's at the home. The homeowner brings some people in to watch the dogs and, you know, let the dogs out during the day. Is that enough in and of itself, just because they've hired somebody to watch the dogs and let the dog out? Is that going to carry the day, or do you need a little bit more by way of specific, explicit instructions? Because I don't know that having somebody, your neighbor, could come into your house and let the dog out. Are they going to be liable? If the neighbors are coming in at the request of the homeowner, I would say, yeah, yes, because they would not be there but for the instructions of the homeowner. And if they're telling them, you know what, I want you to walk the dog out here, or I want you to let the dog out into the yard, or I want you to use these shot collars, I want you to use these leashes, I want you to be able to do that. So you're saying there would be absolute liability on the part of the homeowners, even though they're not there to control the situation?  Well, two things. One, they can control the situation because they were the ones coordinating who was going to be there. They knew that the pooper scoopers were going to be there every Monday, and they easily could have told the dog walkers that. But more importantly, the Animal Control Act isn't about fault. It's about who has the ownership, who has that status, and it's an and or proposition. And so in this case, we can't release the homeowners because they also had control.  At the time of the injury. And how did they have control at the time of the injury? Had they told Marcy, the dog walker, you know what, today's Monday, so between the hours of 10 and 12, a pooper scooper is going to come by. Be extra aware we didn't let the dogs out today on your first trip. Never would have happened. This accident never would have happened. That's a counterfactual conditional. On point, how do the owner defendants even know when a pooper scooper is coming? I thought that it was only on Mondays, but they didn't necessarily know what time it was. Was it known what time it was? According to Sean, it was basically the same time every Monday, you know, within a, you know, give or take an hour or two. So are you saying that if they told the dog walkers to not let the dog out or the dogs out during the period of time that the pooper scooper man was there, then they'd be liable even though the independent contractor didn't follow the supervisory instructions? Well, then I think you have a different argument, because then you can say that, you know what, we did everything we could have done to try to prevent this from happening. But then you figured from my original assertion, I said, are you saying the homeowner should be absolutely liable in every case? And you seemed to indicate yes. But then when you started to give your argument, you implicitly realized there has to be something more than merely saying walk a dog. Right, and that's the situation here. So the issue is that, and this is what happened at the trial court level, we're confusing this issue of fault and who should have done what and how. What we have to look at is who was in control at the time. Precisely, who was in control, not merely being fault because you're a homeowner. Right, exactly, because that would be, that would just be mere punishment. So now we've come full circle back to Justice Zinoff's question. Okay, since we now have distilled it down and tacitly acknowledge there has to be something beyond the mere fact that you have somebody coming into your house, what in this case established that kind of control in explicit directions to the agent, if you will, to the person there at the house, that would make the owners liable here even though they were not present? What do we know in the record that they told these people who came over to watch the dog? Both the dog walkers and the homeowners testified that if someone was supposed to be present at the home and someone was going to do work at the home, the homeowner would let the dog walker know and usually give them instruction, you know, cordon off the dogs because someone's going to be coming in today. And so this is no different than that. And this is even more, it's even easier because it's something that happened every Monday. Do you see any difference between having your neighbor come over or their neighbor come over and letting the dogs out versus paying someone to come and do a job? I'll get to the point. No, I know, yeah. Responding at Superior is a concept of tort liability. And responding at Superior relates to principal-agent relationship. It would appear that both corporations or both businesses are independent contractors, unless you disagree. And if so, I'd like to know why. And if they are independent contractors, then I don't see how the owner who isn't present during the work or services provided by the independent contractors could be under or could control the situation. And that is regardless of whether or not they had a litany of provisos or prohibitions or commandments that one or both of the independent contractors were supposed to comply with. Well, I think in this case there was a failure there on the part of the homeowners. Well, let's start at the beginning. Are they independent contractors? Yes. But they were hired directly by the homeowners to do the jobs that they wanted them to do. And it would appear based upon the August Council that it was apparent they also have insurance. Yes. Okay. So they're independent contractors. How is liability attaching to the person that's hiring them if they're independent contractors? If you own a trucking company and you're hired by somebody and you're an independent contractor, how is the principal liable? You're still going to be liable for anything that they're doing in your direction, especially the further down you get into the layers of control. And in this situation, although the dog walkers have their walk in the park, it's their company, all of the things that they were doing were being done at the specific instruction and in the specific way that was told to them by the owners. So that's your argument. It's not really that the homeowners are liable because they hired somebody. It's because you're saying that they gave explicit instructions as to what to do and when to do it. In other words, they retained the control. And didn't they do that with respect to specifically the interactions that were to take place between the dog walkers and the pooper scoopers? No, and that's one of their failures was they didn't. They didn't? They did not. The coordination was never made between, they didn't say, okay, I want you to meet the pooper scooper and the dog walker and you guys coordinate what times you're going to be here. Everything went through the small artists. And so if the small artists didn't communicate back to them the information, it was unbeknownst to them. And so they wouldn't have that extra layer of protection. And it would have been a simple protection that would have avoided the accident completely. What about ringing the doorbell? That is kind of a red herring because he did everything, Sean did everything that he was supposed to do based upon the instructions. So, you know, he was supposed to enter the yard only if there was no dogs present. There were not dogs present. He was doing his job just as he was supposed to until somebody else let the dog out. There's no assumption of risk on his part. Right. How is this different from Hayes? So in Hayes, I kind of extrapolated from your Hayes decision that there is supervisory and physical control. And that's what you're analyzing, whether there's ownership status, especially if there's two parties involved. And in that case, the woman took her dog to the vet clinic and completely turned the dog over to them. She had no idea if they were going to take the dog out, where they would take the dog out, what leash they would use. She was in no position under the Animal Control Act to exert tight control over her animal because she had literally nothing to do with the situation. So she relinquished control here by way of instructions. You're saying the homeowner retained at least some control. Absolutely. And so they have to be held responsible under the plain letter law of the Animal Control Act. All right. So let me ask you a very pointed question. If you had your druthers, what type of ruling do you want us to announce? A bright light ruling that every homeowner under all circumstances is liable or turns on the specific facts of control over the animal even when you're not there? Is that what you're saying? That's exactly it. It should be based on the facts of control in the case because that's really going to guide the decision about who's in control or not. And that's really consistent with your analysis in Hayes. You weren't trying to seek out one or the other. It could have been both. In that case, it just ended up being the vet. So in this case, it should be both because if you don't hold both responsible, then if one's let out on illegal technicality, then the other one just sits there and does the empty chair defense. All right. Let me ask you a question. Go ahead. Let's turn for a minute to the assumption of risk argument. Was the plaintiff an innocent bystander or didn't he really assume the risk? He knew he was going into a yard where there were dogs at the residence. Why did he not assume the risk? And was he like the innocent bystander in the Beck's case or not? Absolutely. The assumption of the risk has to look at the relationship between the person and the animal that attacked them. And that's why the only assumption of the risk case is that they found the assumption of the risk applies. Their job has direct contact with that animal. If they're taming horses and get thrown from a horse, well, that's part and parcel of your job. If you are herding cows and you get trampled, that's part and parcel of your job. In this case, what Sean assumed the risk of is maybe getting E. coli from the fecal matter. That was the risk of his job. His job can't include the risk of being attacked by dogs when his job has nothing to do with interacting with dogs. Well, when he didn't ring the bell, couldn't he assume that there was a risk that the dogs might be let out while he was in the yard? No, and I think that the danger in the trial court's ruling on assumption of the risk is that if we take that reasoning of he assumed the risk because he knew the dogs existed and that they existed on the premises. No, I'm not suggesting that because dogs exist, if they didn't exist, he wouldn't be there in the first place. Right. But if the protocol was that he was supposed to ring the bell to let the people in the house know that he was in the yard so as not to let the dogs out, then if he decides either through volition or gross negligence or just inattentiveness, he doesn't ring the bell, then isn't he assuming the risk that the dogs might be let out? No, not at all, because first of all, ringing the doorbell is not part of what he's supposed to do. His job was to make sure that no dogs were in the yard. So whether he had rang the bell or whether he was in the yard. I thought one of the protocols that were in dissue of supervisory authority was that it was understood that he was supposed to ring the bell. Not at all. Not at all? No. So ringing the bell isn't part of this? No. This is, again, where the defendants tried to go off course. And in talking with Kandra, there was that issue of ringing the doorbell. And it was a subsequent remedial measure that Jacqueline Smolarz wanted them to do. And that's what I was talking about in dissue of control. But beforehand, his job was to claim the buckets, wait, make sure he hears the dogs in the window. Once he's done that, confirmed they're inside, then he could proceed into the yard. And the one time he encountered them when he claimed the buckets, then he went to go ring the doorbell so that the dogs could be let back in. So in your example, if he had encountered the dogs in the yard and then went to go ring the doorbell to let them in, and then they got let out on him again while he was in the yard, you can't say he assumed the risk of that when he took the measures to make sure that the yard was empty. Well, if he had rang the doorbell and they had let the dogs out despite the ringing, then I could easily see how he didn't assume the risk that the dogs might be inadvertently let out while he was there. But if he didn't ring the bell? His job doesn't have anything to do with dogs or dog attacks. And so I'm afraid that if we extend it to… Are you saying he doesn't have a duty to at least attempt to notify whoever is in the house that he is in the yard so they don't let the dogs out? No, absolutely not. The focus on the ACA is who's the owner, did he provoke, did he trespass, did he get injured? All of those things are met, and we know that the custodians and owners are the dog walker and or the homeowners. Under assumption of the risk, we're looking at did he assume the risk of what he was doing? His risk of his job was anything related to poop. It had nothing to do with being attacked by dogs. And if we extend it to Sean, then it will extend to anybody who's there, landscaping, anybody who's there, even somebody who comes to fix the dog fence, the electric perimeter dog fence. They're there, obviously they know dogs are in the home. Do they assume the risk of being attacked by dogs simply because somebody let the dogs out on them? That can't be. And then if we take that one step further, then it becomes do social relationships, do they assume the risk because they are invited over for a barbecue but you know that they have dogs at this home? When you go to a barbecue, you might assume the risk of choking on a hot dog, but you're not assuming the risk of being attacked by a dog simply because you know that the dogs are there and that, you know, they could be attacked. So you have to focus on what was their activity and what's the relationship with the dog because that's where the inherent risk comes from. Let me ask you a question about your negligence count. It appears that you raised, you plied only the bare conclusion that the homeowners knew about the dog's dangerous propensities, but you didn't allege any specific facts to support that. Isn't that a problem? Under the pleadings? Yeah. You know, you didn't allege any prior incidents, knowledge, basically that they had knowledge of the dog's dangerous propensities. Is that sufficient? In the complaint itself? Yes. Or in the motion for summary judgment? In the complaint itself. Did you allege anything beyond that allegation they knew of without any underlying facts plied? If it was a simple, if it was a plainly written complaint, those can be amended at any time, even on the day of trial. But I mean, summary judgment was granted on the form that it was in, and that was, I mean, would you agree that normally you'd have to have some specific factual allegations? Normally, yes, but I think that you can't, especially when you file a complaint, you don't necessarily know all of those things until you do discovery. But you never moved to amend, did you? No, we didn't move to amend, but we have the evidence through the summary judgment. Well, assuming that you filed a complaint that was wanting facts, the facts that the motions of summary judgment was filed required you to arguably establish a prime invasive case upon which a judgment or a case that a judgment would be supported. And so whether or not you had a proper or defective complaint isn't as important as whether or not at the motion for summary judgment you arguably presented material issues of fact that would preclude a grant of summary judgment. That's right. What facts are you aware of that would indicate that they had any knowledge, that the defendants had any knowledge that there was a dangerous propensity? And I would be curious as to how you would refer to your own client, because these dogs never bit your client. They only ran towards him, correct? Right. So the only dangerous propensity that your client apparently witnessed was dogs running in their yard. Charging. Charging. Yeah. Okay. If I may, it is an important distinction. And the best way to explain that is by the fact that they had the four dogs, the Sheltie and then the two pit bulls and the King Corso. All four dogs on that day, for example, were let out into the yard. The Sheltie maybe ran out a little bit. The other dogs charged, growled, teeth bearing. And let's talk about the propensities prior to the date in question. Same thing. What propensities or what facts that would establish these propensities were presented to the court for consideration? The dog walkers testified that they had seen the dogs. If they saw somebody on the other side of the fence, they would come charging up to the fence, teeth bearing, growling. And the only thing that would be protecting that person essentially was the fact that there was a barrier between them, which is exactly what happened to Sean. Whenever people would come over to the home, they would cordon off the dogs because, as they said, they're friendly, but they're really quite intimidating. When you say they, are you referring to the defendants, the owners, or the defendants, the walkers? All defendants. All defendants testified similarly about the nature of the dogs. And they all went out of their way to say that the Sheltie was the good guy, Sheltie was just real docile, and the other ones were aggressive. They never said aggressive. You know, intimidating, exciting, excited, things like that. And so even through the preparation for their depositions, the careful preparation, even the careful avoidance of the word aggressive, we were still able to elicit the testimony that they did do exactly what they did to Sean many times, and that they took the precautions to try to prevent that by cordoning off in the house, by you having the shot collars, by having the electric fence, and rotating that shot collar among those charging dogs, different than a running dog or a dog that just barks because there's somebody outside. There's a difference. And I don't want you to think that I'm asking you to say that just because a dog barks or just because he runs and wags his tail that that's somehow a mischievous propensity. This is different. This is charging. This is baring teeth. This is growling. This is intimidating. And that is different. And that is a mischievous propensity. The veterinarian assigned one of them, determined one of them to be aggressive.  And so they have their facts. We have our facts. But we have proven our elements of negligence, leaving genuine issues of material fact for a jury to decide. Is time up? Yes. Thank you. You'll have a chance to make rebuttal. Thank you, Your Honor. Mr. Rehfeld, are you going to go first? Please. Thank you, Your Honor. I represent, in this case, the dog sitters, Marcy Metcalf and Michelle Schnabel. Marcy was the person who actually let the dogs into the yard on the date of the plaintiff's accident. The trial court in this case entered summary judgment in favor of my clients on the Animal Control Act count of the plaintiff's complaint on the grounds that the plaintiff had assumed the risk of being injured by an encounter with the dogs. Assumption of risk, when it's applicable, is a complete bar not only to the plaintiff's Animal Control Act claim, but also to its common law negligence claim. So if this court finds that the assumption of risk doctrine applies here, then this court should affirm summary judgment in favor of my clients on both counts of the complaint on the grounds of assumption of risk, not just on the Animal Control Act count. That's not what the trial court did, but that's what the court, in any words, did. And there was an assumption of risk in this case based on what? There's two types of assumption of risk here. The trial court was focused on implied assumption of risk. The doctrine was primary implied assumption of risk. And they were relying, the trial court was relying primarily on the Edwards v. Lombardi case to support the application of that doctrine. In Edwards v. Lombardi, the plaintiff was hired by the defendant to clean out a barn in which the defendant was keeping a llama. The plaintiff had had prior experience with this llama, knew that llamas would be aggressive, and knew at the time he entered the barn to clean it that the llama was roaming free inside the barn. The plaintiff entered the barn, was injured by the llama. Okay, and isn't that the opposite of what happened here, that the plaintiff came along and did what he was supposed to do, unless you can point out that I missed this in the record, made the noise, looked in the yard, determined that the dogs were not present, unlike the llama case. He didn't just wade into the barn like with the llama. He did what he normally does to make sure no dogs are in the yard before he went in. Didn't he take steps to try and prevent something from happening? No, he did exactly the opposite because he was instructed to do exactly the opposite. What the plaintiff's employer told him to do in this, he had two sets of rules. The plaintiff's employer gave him two sets of rules. One for when there was dogs in the yard, which is when he would bang the pots to see whether there were any, and one when there wasn't dogs in the yard. If he approached the house, banged his pots, found out there was no dogs present in the yard. Which is what he did here, correct? Yes. The plaintiff's employer instructed him, under all circumstances, not to ring the doorbell, not to knock on the door. The plaintiff's employer didn't want him doing that, even though it was an obvious risk of not doing it. The plaintiff in this case had formed the opinion, based on his past experience with these particular dogs, that they were aggressive. He knew they were in the house because he heard them. When he was banging on those pots, he heard the dogs. They weren't in the yard, but they were inside the house. So he knew by going into that yard and not telling anybody in the house that he was there. In fact, he didn't even know whether there was anybody in the house at all. He never tried to find out. He knew by going in there that there was a risk that people in that house, not knowing he was there, were going to release those dogs into that yard. In that Edwards case, what the trial court relied on was employment. Let's back up a second. Did you just state that he was told not to ring the bell? He was told not to ring the bell. And he followed the homeowner's instructions. He wasn't told that by the homeowner. He was told that by his employer. Okay. So he follows the employer's instructions, ascertains that the dogs are in the house, which is where he wants them to be, and he enters the yard. Do you believe that's an assumption of risk because at any given moment somebody would release the dogs? Yes, because he has no idea. Number one, he doesn't know whether there's anybody there. And number two, he doesn't know whether if there is somebody there, they know he's there. Was there any evidence? And there was a – I think it was meted and disputed. Maybe it wasn't that – whether there was any cars in the driveway, anything to indicate people were present. Did that come out in the trial at all? He had testified that he had parked his car to the left of the driveway. Didn't see any cars in the driveway. He's saying he didn't see any cars in the driveway. Well, then that would weigh against the assumption of risk. If the other people, the caretakers, are not present, he arrives, doesn't see any cars in the driveway, hears the dogs in the house, why wouldn't he believe that everything's okay, the dogs are in the house and there's nobody home? The fact that there's no car in the driveway doesn't mean there's nobody home. It just means there's no car in the driveway. You can't tell – or he couldn't tell just from the fact that there was no car there whether there was somebody inside that house or not. You want us to announce a rule that if you're a pooper scooper, if you will, and anytime you show up, you have to assume the risk that dogs can come charging out of the house. Who wants to do this job, then, if that's the case? You don't have to assume that risk. What you have to do is announce your presence. You have to eliminate that risk because by not announcing your presence, you're creating it. He's banging on the pot. He heard the dogs.  To people inside the house? No, I don't believe so. So you're saying that's a known risk of employment. When he took the job to assure that – to be a pooper scooper, that that is one of the risks that he assumed because his employer had made this cost-benefit analysis that he shouldn't ring the bell as a practice. That's what his employer wanted him to do, and that's what he did. So he went wrong because he followed his employer's instructions, obviously. Yes. Kind of like an employer that tells a 7-Eleven clerk not to carry a gun. And do you want to address the risk of that? If they get shot on the basis that they don't have a gun. Now, be careful. This is recorded. No. How does this affect on this negligence claim the – if we look at comparative negligence, how does this position affect that? What the case of Edwards v. Lombardi said, and I don't believe that was the only one. It was quoted in a couple of previous cases. The Edwards v. Lombardi court said where the implied primary assumption of a risk doctrine applies, it serves as a complete bar, not comparative negligence, a complete bar to a negligence claim as well as to a claim brought under the Animal Control Act. And this Edwards case is not old. It's a 2013 case, so it came out way after comparative negligence came around. And that's exactly what the court in Edwards did. It barred both claims. So you're saying assumption of risk is not available under the Animal Control Act? It is. It is. Okay. Yes, and that's what the Edwards court found as well. I believe that the trial court correctly applied the assumption of risk doctrine in this case. I have one question. You said that there were two forms of assumption of risk. The first one was implied assumption. Well, there's two forms of proof. The primary implied assumption of risk doctrine infers that a plaintiff has assumed a risk by the plaintiff's conduct and by the relationship between the plaintiff and the defendant. We've got more than that here. We've got the testimony, the deposition testimony of the plaintiff's employer, the owner of Pooper Scoopers. She went in great detail in her testimony about the fact that she wanted her employees not to ring that bell and not to knock on that door because she didn't want them to waste the time doing it. She testified that most of her customers were not home during the day. So in most cases, when you knock on the door, you're not going to get any increased benefit of safety if you were an employee because there's going to be nobody home anyway. She acknowledged that there was a few that were. I'm not concerned with that kind of specificity. Okay. Is there any other aspect of assumption of risk other than what you've already related? No. When I was talking about an additional assumption of risk, I was talking about the additional evidence that was in there. Okay. Thank you. Good afternoon. May it please the court, counsel. Good afternoon. My name is Mike Reesus, and I'm here today on behalf of the homeowners, Lance and Jacqueline Smolars. We think the trial court should be affirmed for a couple of reasons. First is to the Animal Control Act, there simply is no factual, reasonable basis for imposing liability on the homeowners when they had relinquished physical control and custody of the dogs to the pet centers at the time of the incident. Like the Hayes case. Like the Hayes case. Now, I know counsel talks about supervisory control. Right. Those words don't appear anywhere in Hayes. They're simply a gloss put on that decision by counsel. I think that what the court said in Hayes, and I know the two members of this court concurred in Hayes, talk in terms of what is the physical ability to prevent the injury. One case that the court found, quote, particularly instructive, was Carl versus Resnick. And in Carl versus Resnick, the owner of the horse was held liable because she was still present at the time of the injury. And the court drew the conclusion, the inference, that because she was present, she still had the ability to prevent the injury that she had the necessary element of control. So are you saying because the homeowners were away from their home? At the precise moment of the injury, they did not have the ability to prevent the injury. Well, you seem to be making a two-part argument, which I think would be a better argument, but I still have questions. You said they relinquished care, custody, and control to the other people, and they were not home. Correct. Okay. Let's assume a case. The one follows, I think, from the other. Right. But, you know, a Brightline ruling, I don't know if anybody's arguing for it, but let's assume a case where they did. Obviously, they were not home. Right. Okay. And they ostensibly relinquished care and control to the people that were there. Yes. But they gave the people that were there explicit, detailed instruction as to what times to let the dogs out, irrespective of what's going on. Okay. A very detailed list of protocols with regard to the dogs. Okay. Are we saying, or is it your argument, that that would be totally irrelevant? Once they leave the house, that's it. They're off the hook no matter what they say to the custodians. Is that your position? I think my position is that once, under the Animal Control Act, once they leave and they no longer have the ability to prevent the injury, somebody else is stepping into that role. Somebody else is stepping into that role. Because the Act defines owner to include the pet sitter, somebody who's in care or in custody of the animals. So, yes. See, I guess you're saying this, so you've been equating the control with, quote-unquote, absolute physical control. Because you could make an argument that somebody could have one of those fancy security systems, as you know, be looking inside their house at all times, and deciding whether or not they're complying with their directions. So, is it possible, at least arguably, you could retain control over what they're doing, even though you're not physically present, is my question. Well, I suppose if you want to say you're present in some other way because you are the all-seeing eye, you could always set up a system of surveillance. That's right. It could happen. I mean, okay, is it a metaphysical, you know, okay. I mean, if you want to take it to that degree, okay. I suppose. I don't want to. You never know what the next case is going to be. But I never, you know, I don't want to say, okay, it could never happen. But all I'm saying is that we relinquished control to professional pet sitters. We had no reason to think that they were unable in any way to keep the dogs, you know, to prevent injury to others or to themselves. And we never knew of another instance before. I think maybe Justice Dunoff was going to ask the question. Right. I was. But what about the fact that they put up the fences, the electric fence, the other fence? I mean, isn't that a continual form of control that they maintained even though they weren't there physically? Yes. And they were acting responsibly, weren't they? They were acting responsibly because they put up the double barrier. And they had the signs warning don't trespass. You know, dogs are present. But they are not at the precise moment of injury. They don't have the ability to control whether the dogs are in the house or out of the house. And let's be very clear here because this relates to both the common law claim and the negligence claim. Those dogs, and, you know, we can talk about, you know, what their propensities are. Those dogs could be the hounds of the Baskervilles. But as long as they're in the house, okay, they are unable to charge anyone present to the backyard. And it was the pet sitters who made the decision when to let them out into the backyard. And we had no reason to know one way or another, you know, that that would be done without adequate precautions being done. If you're going to say, you know, in other words, the negligence claim isn't just based on whether the dogs have certain propensities, okay. It's also based on the fact that somebody failed to look before the dogs were let out. And we had no reason to know because it never happened before that we knew of that they would be let outside to do their business or whatever without anyone checking for us to see whether someone might be present. Now, there was this, the other case I want to go back to, going back to Hayes because I want to get back to Hayes, you know. But let's face it, Hayes is where the analysis begins and where I think the analysis can end. The other case in Hayes that the court found instructive was Pappish, where you have a noncustodial parent who was technically the legal owner of the dog. And yet the court is saying, and Hayes quotes Pappish to say that extending liability would seemingly fly in the face of such a policy as far as who's in the best position to prevent the injury. Because the mother was not in a position when she could have controlled the dog or prevented the injury. Well, at the precise moment that those dogs are let out into the backyard, Jacqueline's at work, Lance is at work. And you can't be at two places at the same time. That's why we have the pet sitters. Well, why wouldn't the Wilson v. City of Decatur case govern here? And the municipality there was liable as an owner under the act when the employee really was controlling the dog. Well, I mean, I suppose I'd say a couple things. First, the corporation, the municipal corporation can only act through others, right? I mean, it's a legal entity. It can only work through others. I think Wilson is easily distinguishable on that basis here. We don't have any basis for vicarious liability. I heard counsel say that the pet sitters are independent contractors. So I don't think we have, and there was never an argument made about vicarious liability. So I don't think that Wilson is in this case at all. I know my time is up. I know that sound is my cue to leave. The only thing I would say, my way of conclusion is, Justice Hudson, you asked opposing counsel the question about what kind of decision should come out of the panel today. I can tell you, as far as we're concerned, Hays is the law. Hays is good law. The judge applied Hays properly. We ask you to affirm based on Hays. Thank you very much. Thank you. Ms. Efezi? Thank you. One of the first things that jumped out to me about the last counsel's argument was he talked about acting responsibly. They had signs. They did this. They did that. That's irrelevant. The Animal Control Act is not fault-based. Is not what? Fault-based. It's not a negligence standard. We don't need to know who did anything wrong. All we need to know is did the plaintiff trespass, did the plaintiff provoke, did an injury happen, who's the owner? And if the dogs got out because there was a – just let's say they got out and the dog owners were not home, the dog owners are still liable, even if they had all kinds of security and all kinds of precautions that they took. They were the owners because it's their home and their dogs. So they would be liable under the Animal Control Act. Right, but he takes it to another level. In that case, though, you could not fairly say that they relinquished their custody control to a third party. He's saying that's the difference here. Yes, if they're at home and they leave the door open, of course, because they hadn't relinquished control to anybody. But here he's saying they turned it over to the professionals. And I think the danger is that he's saying they leave the home, they're not liable anymore because they've relinquished any control over the dogs, over letting the dogs out. That's his argument. And that's a dangerous precedent to set because what really matters is who is the one in tight control. And if there was nobody else in the home and the dogs got out on their own, the owners, the smallers, would be responsible. In this case, yes, the dog walkers physically let them out, but the dog owners were the ones who put them there. And they're the ones who could have easily coordinated the schedules to make sure that this didn't happen. Well, it wasn't discussed, but I would think that anybody who contracts with anybody else to do something in the way or nature of a service for them might be held liable if the person they employed was deemed to be incompetent, in which case we're talking about a situation of negligent entrustment of those animals to that party. So I don't think your complaint alleges negligent entrustment by the SMOARs to the walking service. So I don't think that what might be the best argument for an exception to the rule relative to relinquishing custody exists in this case. I'd be curious to hear your comments about what Mr. Rayfield was talking about regarding your client's employer's direction that he not ring the doorbell. So I noted that as well. Again, irrelevant here. We met the Animal Control Act elements. The only thing that can bar that is assumption of the risk. He can't assume the risk if he's doing everything he's supposed to do, and he made sure the dogs weren't in the yard. Right? Now, let's say — Did he use a super duper, pooper scooper? Right. Now, let's say that he did take the step of ringing the doorbell and nobody was home, and the dogs, again, running up against the window confirms they're inside. While he's in the backyard, the dog walkers arrive and then let him out. I mean, he still doesn't assume the risk of being attacked by dogs because he did his job. The assumption of risk is a question of fact as opposed to a conclusion that as a matter of law no reasonable person would disagree with. So, because I think your argument has been there's been no assumption of risk when you could also argue in the alternative that there's a material question of fact as to whether or not there is an assumption of risk. That's right. So, why don't you talk about whether or not there's a material issue of fact? Material issue of fact in this case would be, on the one hand, they're saying that he was doing something that's related to a dog, because he's scooping up the dog poop so that he's aware of dogs. That's really the only thing that ties him to a risk of being attacked by dogs. Other than that, there's nothing about what he does that is related to or that would cause him to assume the risk of being attacked by a dog. The facts in this case are that he followed the protocol, he entered an empty yard, and somebody else's negligence, and it's undisputed that the dog walker let them out. But for that third-party intervention, he got injured. And so he can't have assumed the risk of that. If he had entered the yard with the dogs in there, then, yes, he's assuming the risk of being injured. You're saying it has to be a known risk and not a completely unusual, unanticipated risk. Right. And I think that it would be different, too, if, like I said, he entered the yard with the dogs in the yard because he knew through his work that they were aggressive dogs. Then I think we'd have a different factual situation, but that was not the case here. Okay. Thank you. We'll take the case under advisement. Court's adjourned.